527 S.E.2d 167

**Lahoma Hunley LESTER, Plaintiff Below, Appellant,**

v.

**James Anthony HUNLEY, Defendant Below, Appellee.**

**No. 26120.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 2, 1999.

Decided Dec. 13, 1999.

Michael Magann, Esq., Appalachian Research & Defense Fund, Inc., Princeton, West Virginia, Attorney for Plaintiff Below, Appellant.

James Anthony Hunley, War, West Virginia, Pro Se.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of McDowell County entered on December 17, 1998.

In this appeal, Lahoma Hunley Lester, the appellant, contends that the circuit court erred by transferring custody of her three children to her ex-husband, James Anthony Hunley, the appellee. This Court has before it the petition for appeal, the designated record, and the briefs and argument of counsel.[1] For the reasons set forth below, the final order of the circuit court is affirmed.

I.

The parties were married on May 15, 1987, and were divorced on November 16, 1993. They have three children: Victoria Christene Hunley born April 1, 1988; Brookie Lynn Hunley born August 19, 1989; and Sabrina Lucille Hunley born March 11, 1991. At the time of the divorce, Ms. Lester was found to be the primary caretaker of the children and was awarded exclusive custody. Mr. Hunley was granted reasonable visitation.

Both parties resided in McDowell County, West Virginia, until the summer of 1998, when Ms. Lester and the children moved to Princeton, West Virginia, with Dave Collins, Ms. Lester's then boyfriend and present husband. On October 8, 1998, Ms. Lester left the children with her sister, Bessie Little, for a few days while she and Mr. Collins went to New Jersey to investigate the possibility of relocating Mr. Collins' pawn shop. While Ms. Lester was in New Jersey, Ms. Little took the children to see their maternal grandmother, Lorain Justus. Ms. Justus then took the children to Mr. Hunley's home for a visit, and they stayed with him for a couple of days. When Ms. Justus went to pick up the children on October 12, 1998, Mr. Hunley informed her that he was planning to seek a change of custody order the next day.

On October 13, 1998, Mr. Hunley presented evidence, ex parte, to the Circuit Court of McDowell County and was granted a change of custody order. Upon learning that Mr. Hunley had obtained custody of the children, Ms. Lester filed a motion for relief pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure.[2] Thereafter, a hearing on

---

1. James Hunley appeared pro se and did not file a brief with this Court.

2. Rule 60(b) of the West Virginia Rules of Civil Procedure provides, in pertinent part:

the motion was scheduled for December 3, 1998.

At the December 3, 1998 hearing, Mr. Hunley asserted that the children were in danger of being abused while in their mother's custody. Specifically, Mr. Hunley stated that he believed that one of the children had been sexually assaulted by a friend of Mr. Collins. The Court, sua sponte, took the testimony of the children who indicated that they wanted to live with their father. In addition, one of the children testified that a friend of Mr. Collins had placed his hand inside her underwear. The child acknowledged that when the incident happened in December 1997, she told her mother that Mr. Collins' friend had put his hand on her chest and leg. Based upon the testimony, the circuit court denied Ms. Lester's motion and ordered that custody of the children remain with Mr. Hunley. Ms. Lester was granted visitation. This appeal followed.

## II.

■ The issue before this Court is whether the circuit court erred by transferring custody of the children to Mr. Hunley. On several occasions, this Court has stated that: "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syllabus, *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977). *See also* Syllabus Point 4, *Pearson v. Pearson,* 200 W.Va. 139, 488 S.E.2d 414 (1997); Syllabus Point 2, *Petruska v. Petruska,* 200 W.Va. 79, 488 S.E.2d 354 (1996). With regard to a modification of custody, this Court held in Syllabus Point 2 of *Cloud v. Cloud,* 161 W.Va. 45, 239 S.E.2d 669 (1977), that "[t]o justify a change of child custody, in addition to a

change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child."

Ms. Lester contends that there was no change in circumstances warranting a change of custody. In addition, she asserts that the trial court did not follow the proper procedure for an ex parte change of custody. She states that the circuit court failed to have a full evidentiary hearing as required by this Court's decision in *State ex rel. Chris Richard S. v. McCarty,* 200 W.Va. 346, 489 S.E.2d 503 (1997) (per curiam), and that in order to secure a hearing, she had to file a motion pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure.

■ After examining the record, we agree with the circuit court that there was a change of circumstances of the parties warranting a change of custody. Specifically, there were serious allegations that one of the children had been sexually abused by a friend of Ms. Lester and her husband. In fact, the child testified about the abuse before the court. "In visitation as well as custody matters, we have traditionally held paramount the best interests of the child." Syllabus Point 5, *Carter v. Carter,* 196 W.Va. 239, 470 S.E.2d 193 (1996). Certainly, it was in the children's best interests for them to be removed from this situation. In addition, the children testified that they wished to live with their father. Thus, we do not find that the circuit court abused its discretion by transferring custody of the children to Mr. Hunley.

■ We are, nevertheless, concerned about the manner in which the circuit court transferred custody of the children to Mr. Hunley. Certainly, Mr. Hunley acted properly by going to the circuit court and requesting that he be granted custody of his

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic),

misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

children once he learned of the alleged abused. It is obvious that Mr. Hunley was concerned for the welfare of his children and wanted to prevent further abuse. It also appears that Mr. Hunley may have thought that Ms. Lester had abandoned the children. In such instances, the circuit court has the authority to remove the children from their current custody placement without notice to the party whose custody rights are affected. However, as we explained in Syllabus Point 1 of *State ex rel. George B.W. v. Kaufman*, 199 W.Va. 269, 483 S.E.2d 852 (1997):

> Although a court may enter an emergency order transferring custody where there are allegations of abuse or neglect without notice and full hearing if the court deems such an order necessary for the immediate protection of the child(ren), such order

should be of limited duration, should set a prompt and full hearing on the allegations, and should apprise both parties of the scope of the hearing. In the event such emergency change is found to be warranted, the court should immediately appoint a guardian ad litem for the child.[3]

■ In this case, it appears that no hearing was scheduled after the emergency custody order was entered and no notice was given to Ms. Lester. Once Ms. Lester learned of the emergency order transferring custody of the children to Mr. Hunley, she filed a motion pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure. A hearing was then scheduled for December 3, 1998.

■ Obviously, the circuit court did not follow the proper procedure for granting an

---

3. Although not directly applicable to this case, W.Va.Code 48–2–13 (1993), which provides for temporary relief *during pendency of action for divorce, annulment or separate maintenance*, is also instructive on this issue. In particular, W.Va.Code 48–2–13(a)(2) provides that "[t]he court may provide for the custody of minor children of the parties subject to such rights of visitation ... as may be appropriate under the circumstances." W.Va.Code 48–2–13(e) further provides that:

> An ex parte order granting all or part of the relief provided for in this section may be granted without written or oral notice to the adverse party if:
> (1) It appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or such party's attorney can be heard in opposition. The potential injury, loss or damage may be anticipated when the following conditions exist: Provided, That the following list of conditions is not exclusive:
> (A) There is a real and present threat of physical injury to the applicant at the hands or direction of the adverse party;
> (B) The adverse party is preparing to quit the state with a minor child or children of the parties, thus depriving the court of jurisdiction in the matter of child custody;
> (C) The adverse party is preparing to remove property from the state or is preparing to transfer, convey, alienate, encumber or otherwise deal with property which could otherwise be subject to the jurisdiction of the court and subject to judicial order under the provisions of this section or section fifteen [§ 48–2–15] of this article; and
> (2) The moving party or his or her attorney certifies in writing any effort that has been made to give the notice and the reasons sup-

porting his or her claim that notice should not be required.

Finally, W.Va.Code 48–2–13(f) states that:

> Every ex parte order granted without notice shall be endorsed with the date and hour of issuance; shall be filed forthwith in the circuit clerk's office and entered of record; and shall set forth the finding of the court that unless the order is granted without notice there is probable cause to believe that existing conditions will result in immediate and irreparable injury, loss or damage to the moving party before the adverse party or his or her attorney can be heard in opposition. The order granting ex parte relief shall fix a time for a hearing for temporary relief to be held within a reasonable time, not to exceed twenty days, unless before the time so fixed for hearing, such hearing is continued for good cause shown or with the consent of the party against whom the ex parte order is directed. The reasons for the continuance shall be entered of record. Within the time limits described herein, when an ex parte order is made, a motion for temporary relief shall be set down for hearing at the earliest possible time and shall take precedence of all matters except older matters of the same character. If the party who obtained the ex parte order fails to proceed with a motion for temporary relief, the court shall set aside the ex parte order. At any time after ex parte relief is granted, and on two days' notice to the party who obtained such relief or on such shorter notice as the court may direct, the adverse party may appear and move the court to set aside or modify the ex parte order on the grounds that the effects of such order are onerous or otherwise improper. In such event, the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require.

emergency change of custody. However, given the circumstances of this case, we do not feel that it would be appropriate to disturb the lower court's order. As noted above, the children have indicated that they wish to live with their father. Moreover, as we also discussed above, the nature of allegations warranted a change of custody in this case. Clearly, it is in the best interests of these children to remain in the custody of their father. Although we affirm the order of the circuit court today, we do not intend to send a message that the circuit courts may disregard the procedure established for an emergency transfer of custody in certain circumstances. The court should always afford the custodial parent prompt notice and an opportunity to be heard. It is only by following this procedure that the due process rights of both parties are protected, and the court is provided with greater and more reliable evidence upon which to base its decision.

Accordingly, for the reasons set forth above, the final order of the Circuit Court of McDowell County entered on December 17, 1998, is affirmed.

Affirmed.

Judge GARY L. JOHNSON, sitting by temporary assignment.

Justice SCOTT did not participate.