585 S.E.2d 14

**In re the Marriage of William G. WILSON, Petitioner Below, Appellant,**

**v.**

**Tina L. WILSON, Respondent Below, Appellee**

**No. 30844.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 26, 2003.

Decided May 7, 2003.

Brian K. Carr, Esq., St. Marys, for Appellant.

Gary L. Rymer, Esq., Middlebourne, for Appellee.

PER CURIAM.

The appellant William G. Wilson appeals from a Pleasants County Circuit Court's divorce order adopting a family law master's recommended order on the issues of permanent alimony, child support calculation, and attorney's fees and costs. We affirm the circuit court's rulings and also order the appellant to pay the appellee's reasonable costs and attorney's fees incurred from defending this appeal.

I.

The parties William G. Wilson and Tina L. Wilson were married in 1983 and have one child, a daughter, who was born in May of 1985. The parties separated in July of 1999 and the appellant filed for divorce in December of 2000. After the appellant filed for divorce, the parties participated in mediation and agreed to a parenting plan for their daughter. The parties also reached an agreement with regard to the equitable distribution of their marital assets.

The Family Law Master ("FLM") [1] held the final divorce hearing on May 29, 2001. At the final hearing, the parties presented evidence on the amount and duration of alimony, if any, that appellee should be awarded, the income of the parties in order to calculate the appellant's child support obligation, and the parties' attorneys' fees and costs.

In its recommended order, the FLM found that during the first ten years of the marriage, appellee Tina Wilson had been primarily a stay-at-home parent, but had worked outside the home as a secretary from June of 1982 until September of 1984, and then again from September of 1994 through April of 1998. The appellee obtained new employment in September of 2000, and at the time of the final hearing, she earned $9.50 an hour, or approximately $1,646.67 per month.

The FLM recommended awarding the appellee $800.00 a month in permanent alimony. In making her recommendation, the FLM set forth the various factors that she considered, including the length of the parties' marriage, the appellee's truncated work history, the appellee's earning potential in comparison to the appellant's earning potential, the financial circumstances of the parties, and the tax consequences of an alimony award.

Throughout their marriage, the appellant worked as a pipefitter and was the primary wage earner. At the time of the final divorce hearing in May 2001, the FLM found that the appellant earned an average gross salary of approximately $70,000.00 for the last three years of the parties' marriage, and that in 2000, the appellant earned $50,153.40 plus $20,464.08 in additional earnings. The FLM found that the appellant's gross income was $60,385.45 for purposes of awarding child support, and calculated the appellant's monthly gross income as $5,032.13. The FLM recommended that the appellant pay $497.17 per month in child support until the parties' daughter turned eighteen in May of 2003.

The FLM also awarded the appellee $500.00 in attorney's fees and costs based on the respective financial circumstances of the parties.

On December 31, 2001, the circuit court adopted the FLM's recommendations.

I.

■ This Court has previously stated a three-pronged standard for reviewing the findings of family law masters that circuit courts have adopted.

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying fac-

1. Effective January 1, 2002, family law masters were replaced by family court judges. *See West Virginia Constitution*, Article VIII, § 16; *W.Va. Code*, 51-2A-1 to -23 [2001].

tual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Syllabus Point 1, *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995).

The appellant argues that the circuit court abused its discretion in affirming the FLM's recommendation of permanent alimony because the factors listed in *W.Va.Code,* 48-2-16 [1999] do not support the FLM's recommendation.

Specifically, the appellant argues that their marriage lasted only eighteen years and that the appellee is only 37 years old. He adds that the FLM was mistaken in finding that the appellee did not regularly work outside the home, and that the FLM underestimated the appellee's future earning potential. The appellant argues that, at best, the FLM should award the appellee rehabilitative alimony for a limited amount of time.

Regarding the award of alimony, this Court has stated that:

> Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.

Syllabus, *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977).

*W.Va.Code,* 48-2-16(b) [1999] lists twenty factors that family law masters must consider in calculating alimony awards.[2] Although *W.Va.Code,* 48-2-16 [1999] lists twenty factors, a family law master only needs to make specific findings for those factors that are applicable to the case at hand. *Burnside v. Burnside,* 194 W.Va. 263, 275, fn. 30, 460 S.E.2d 264, 276, fn. 30 (1995). "An award of alimony by its very nature, as well as by the guidelines established by the Legislature, does entail the examination of various financial questions. As has been indicated above, one of those factors is the income-earning ability of the parties. *W.Va.Code,* 48-2-16(b)(4)." *Driver v. Driver,* 208 W.Va. 686, 689, 542 S.E.2d 849, 852 (2000) (*per curiam* ); *Josimovich v. Josimovich,* 212 W.Va. 874, 575 S.E.2d 633, (2002) (*per curiam* ).

The FLM stated, on the record and in her recommended order, the various factors that she considered in reaching her recommendation, including the length of the parties' mar-

2. The twenty factors listed in *W.Va.Code,* 48-2-16 [1999] are:

> (1) The length of time the parties were married;
> (2) The period of time during the marriage when the parties actually lived together as husband and wife;
> (3) The present employment income and other recurring earnings of each party from any source;
> (4) The income-earning abilities of each of the parties... [;]
> (5) The distribution of marital property to be made under the terms of a separation agreement or by the court... [;]
> (6) The ages and the physical, mental and emotional condition of each party;
> (7) The educational qualifications of each party;
> (8) Whether either party has foregone or postponed economic, education or employment opportunities during the course of the marriage;
> (9) The standard of living established during the marriage;
> (10) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;
> (11) Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party;
> (12) The anticipated expense of obtaining the education and training described in subdivision (10) above;
> (13) The costs of educating minor children;
> (14) The costs of providing health care for each of the parties and their minor children;
> (15) The tax consequences to each party;
> (16) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;
> (17) The financial need of each party;
> (18) The legal obligations of each party to support himself or herself and to support any other person;
> (19) Costs and care associated with a minor or adult child's physical or mental disabilities; and
> (20) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance.

riage, the appellee's brief work history, the appellee's earning potential in comparison to the appellant's potential earning power, and the tax consequences of an alimony award. We find that the record supports the FLM's recommendation. Therefore, we find that the circuit court did not abuse its discretion in affirming the FLM's recommended permanent alimony award.

The appellant next argues that the FLM erred in calculating the appellant's income for purpose of awarding child support. The appellant argues that his differential pay including the increased "Sunday premium" hourly rate, "supper money," and "call-in earnings" should have been classified as overtime pay for the purpose of calculating the appellant's child support obligation.

For the purpose of calculating child support, *W.Va.Code,* 48A–1A–19(b) [1996] defines gross income as "all earnings in the form of salaries, wages, commission, fees, bonuses, profit sharing, tips and other income.... [and] an amount equal to fifty percent of the average compensation paid for personal services for overtime compensation[.]"

Having reviewed *W.Va.Code,* 48A–1A–19(b) [1996], we find that the FLM properly classified the appellant's earnings, including his increased "Sunday premium" hourly rate, increased hourly holiday rate, supper money, "miscellaneous earnings," and "call-in earnings," as general earnings and not overtime compensation for purposes of calculating the appellant's child support obligation. Therefore, we find that the circuit court did not abuse its discretion in adopting the FLM's recommendation that the appellant pay $497.17 a month in child support.

Finally, the appellant argues that the lower court erred in awarding the appellee $500.00 in attorney's fees when the appellant is financially able to pay her own counsel.

A court may compel either party to pay the other party's attorney's fees and court costs, and, if an appeal is taken, the court can further award the payment of appeal fees and costs.

> In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

Syllabus Point 4, *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996).

Given the unequal incomes of the parties and their unequal potential earning power, we recognize that a greater attorney's fees award might have been reasonable; nevertheless, we find that the circuit court did not abuse its discretion in adopting the FLM's recommendation awarding the appellee $500.00 in attorney's fees.

We further order the appellant to pay the appellee's reasonable attorney's fees and costs incurred in defending this appeal, and order that a hearing be scheduled to determine the appellee's reasonable attorney's fees and costs in accordance with this opinion.

## III.

We find that the circuit court did not abuse its discretion in adopting the Family Law Master's recommended order on the issues of alimony, child support, and attorney's fees. For the reasons stated above, we affirm the lower court's rulings on the issues of alimony, child support, and attorney's fees. We further order that the appellant pay the appellee's attorney's fees and costs of this appeal and remand for a hearing on that issue only.

Affirmed.