# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Diana L. Overberger,**
**Respondent Below, Petitioner**

**FILED**

November 3, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 14-0064**  (Taylor County 11-D-136)

**James K. Overberger,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Diana L. Overberger, by counsel LaVerne Sweeney, appeals the order of the Circuit Court of Taylor County entered December 23, 2013, that affirmed an order of the family court, *inter alia*, awarding petitioner permanent alimony in the amount of $700.00 per month; rejecting petitioner's claim that she is unemployable; and requiring the parties' adult son—who resides with petitioner—to contribute to her monthly living expenses. Respondent James K. Overberger, by counsel Raymond H. Yackel, filed a response, to which petitioner replied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married on November 21, 1985. They separated on November 3, 2011, and were subsequently divorced on the ground that they were voluntarily separated for one year.[1] Two children were born of the marriage. At the time of the trial in this matter, both children were over the age of majority; the older child, Adam, resides with petitioner.

At the time he separated from petitioner, respondent was working as a trip and event bus driver. The family court found that respondent's annual gross income was $40,257.00. Petitioner

---

[1] Though the divorce was granted as a result of their voluntary one-year separation, the family court also found that

> both parties are responsible for the breakdown of this marriage. [Respondent] admitted he had engaged in extra marital affairs, a major factor in the breakdown of the marriage. However, [petitioner's] conduct of allowing the parties' home to be destroyed by their children, neglect of their pets, sleeping all day[,] and staying up all night on the computer with friends is also a significant factor in causing the breakdown of the marriage.

1

is fifty-seven years old and has a tenth grade education. She is a Mexican immigrant and represents that she has a "lost or stolen" green card, which she claims significantly impairs her ability to find employment. She previously worked in retail, at a radio station, and as a home health worker; however, she did not work outside the home for the last fifteen years of the parties' marriage.

Following their separation, respondent was ordered to make the mortgage payment on the marital home to maintain the status quo of the parties. It is undisputed that he made all payments directly to petitioner but that petitioner failed to pay the mortgage from October of 2012 through April of 2013. Petitioner admitted that, out of "desperation," she used the money for her own personal needs and to hire divorce counsel.[2] As a result, the bank foreclosed on the marital home.

Petitioner and the parties' son, Adam,[3] presently live in an apartment that costs $500.00 per month. Petitioner requested alimony in the amount of $2,400.00 per month (the amount of her claimed monthly expenses), having represented to the family court that she is totally disabled and unable to work. Petitioner testified that she suffers from headaches, asthma, heart trouble, arthritis in her hands, back problems, vision problems, and low blood sugar. The family court found, however, that petitioner presented no medical evidence (i.e., no medical records or third-party medical testimony) to support the assertion that she is unable to work. Petitioner further asserted that she is ineligible to collect disability benefits because she is not a United States citizen. The family court found that petitioner "has deliberately and intentionally not sought employment since the separation of the parties, and that she has an obligation to contribute to her support." Further, although the family court acknowledged that petitioner had not worked outside the marital home in many years, it concluded that, based upon her own testimony, she has "excellent computer skills" and that "her health does not prevent her from finding a full time job." The family court also found that each of the parties "is in good physical, mental[,] and emotional health[,]" and that "neither party has any intellectual deficiencies which prevent them from being in the workforce." Consequently, the family court imputed petitioner's income above minimum wage at the rate of $10.00 per hour (at forty hours per week), for a total yearly income of $20,800.00, or a gross monthly income of $1,733.00. The family court further found that petitioner's monthly expenses of $2,400.00[4] include Adam's expenses, whom the court determined that "as an adult, should be contributing at least half of the household expenses."

The family court ordered respondent to pay petitioner permanent alimony in the amount of $700.00 per month, "subject to a recoupment of *pendent lite* expenses, reimbursement for the converted mortgage payments[,] and the equitable distribution payout which amount to a total of $16,744.49. At the rate of $300 per month, . . . recoupment will take 36 months. So, [respondent] shall pay [petitioner] $400 per month for 36 months beginning the first month following the

---

[2] The family court found that "[w]hile in Court in December, 2012, [petitioner] had already not paid three (3) of the mortgage payments on the home, but she did not advise the Court of the same."

[3] Adam was twenty-one years old at the time of the August 22, 2013, trial in this matter.

[4] Respondent's monthly expenses were found to be $1,900.00 per month.

entry of this order. On the 37ᵗʰ month and thereafter, he shall pay her $700 per month." The family court entered its final order on October 21, 2013, which order was affirmed by the circuit court on December 23, 2013. This appeal followed.

Our review of the circuit court's order is governed by the following standard:

> "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law de novo." Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

Syl. Pt. 1, *Mayle v. Mayle*, 229 W.Va. 179, 727 S.E.2d 855 (2012).

On appeal, petitioner argues that the alimony award of $700.00 per month is unjust because it is insufficient to meet her monthly expenses associated with food, rent, maintaining her vehicle, and other expenses as presented before the family court. Petitioner also contends that her alimony award should be enhanced by a "fault premium," presumably based upon respondent's adulterous conduct.[5] In related assignments of error, petitioner also argued that the family court erred in rejecting her claim that she is unemployable due to her age, lack of marketable skills, immigration status, and ill health, and further erred in concluding that the parties' son, Adam, should contribute to the household expenses.

This Court has previously held that

> [q]uestions relating to alimony to and the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused. Syl., *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977).

*Mayle*, 229 W.Va. at 181, 727 S.E.2d at 858, syl. pt. 2. Furthermore, "'a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in

---

[5] *See* Syl. Pt. 4, *Rogers v. Rogers*, 197 W.Va. 365, 475 S.E.2d 457 (1996) ("In appropriate circumstances, an enhancement of an award of maintenance/alimony based on the degree of fault is justified. Enhancement of a maintenance/alimony award by a fault premium may be awarded when additional support is required to reimburse the injured spouse for expenses directly related to the fault or to assure that the injured spouse continues to have the standard of living enjoyed during the marriage. A fault premium may also be applied to discourage the fault or behavior that contributed to the dissolution of the marriage. In determining an award of maintenance/alimony enhanced by a fault premium, the circuit court must consider the concrete financial realities of the parties.").

its entirety.' Syl. pt. 1, [in part,] *In the Interest of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996)." Syl. Pt. 1, in part, *In re Aaron H.*, 229 W.Va. 677, 735 S.E.2d 274 (2012).

The family court found, based upon petitioner's own testimony, that she has "excellent computer skills" and that "her health does not prevent her from finding a full time job." Indeed, with respect to both parties, the family court expressly found that both are "in good physical, mental[,] and emotional health[,]" and that "neither party has any intellectual deficiencies which prevent them from being in the workforce." *See* W.Va. Code § 48-6-301(b) (setting forth factors court shall consider in determining amount of spousal support to be awarded). Though she denied having any marketable skills and claimed to be unable to work due to her immigration status and various undocumented health problems, petitioner offered no objective evidence to refute the family court's finding that she is employable and "has a legal obligation to contribute to her own support." Rather, the family court concluded that petitioner "has deliberately and intentionally not sought employment since the separation of the parties[;]" has an "attitude of entitlement[;]" and "refus[es] to be gainfully employed . . . ." This Court has stated that "[i]t is the role of the [factfinder], and not a court on appeal . . . , to determine the credibility of witnesses." *State ex rel. Corbin v. Haines,* 218 W.Va. 315, 322, 624 S.E.2d 752, 759 (2005). *See State v. Guthrie,* 173 W.Va. 290, 295, 315 S.E.2d 397, 402 (1984) ("The trial judge heard the testimony and was in the best position to evaluate the credibility of witnesses.").

Moreover, although petitioner argues that the alimony award should be enhanced based, presumably, upon respondent's adulterous conduct during the marriage, petitioner fails to acknowledge that the parties' divorce was granted on the ground that they were voluntarily separated for a period of one year. The family court also specifically found that both petitioner and respondent engaged in behavior that contributed to the dissolution of the marriage. *See* n.1, *supra*. Given these findings by the family court, we find petitioner's argument that the alimony award should have been enhanced by a "fault premium" to be without merit.

Finally, with regard to the parties' son, Adam, petitioner contends that the family court erred in concluding that he should be required to contribute one-half of petitioner's expenses. Petitioner argues that Adam is unemployable because he was severely traumatized by his father's adulterous behavior, "his father's pornography stash, and his failed relationship with respondent." Adam testified that he had been admitted to a psychiatric facility for several days in 2012 and had previously been incarcerated. He further testified that he has had difficulty holding down a job. Petitioner argues that respondent failed to rebut the evidence that Adam is unable to work.

Based upon our review of the record—and in particular, Adam's testimony before the family court—we find that that the family court did not err in concluding that Adam should contribute one-half of petitioner's expenses. Notwithstanding petitioner's argument to the contrary, the evidence does not demonstrate that Adam is incapable of obtaining and maintaining gainful employment. Adam was twenty-one years old at the time of the trial in this matter and there was no evidence presented that either his mental or physical health precluded him from working. Rather, he testified, "I have not had a job last more than a month. I don't put that on my brain, or my employers[,] or anybody. If anything I put that on the universe. And maybe I'm just not suppose [sic] to work." Given that petitioner has pointed to no evidence of record

4

demonstrating that Adam is unable to work, we find no error in that portion of the circuit court's order that concludes that he should contribute to the expenses of the household in which he resides with his petitioner.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 3, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II