# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Terri K.,**
**Petitioner Below, Petitioner**

**vs.)  No. 20-1007** (Mercer County No. 8-D-202)

**Robert S.,**
**Respondent Below, Respondent**


# MEMORANDUM DECISION


Petitioner-mother, Terri K., the petitioner below, appeals the November 4, 2020, order of the Circuit Court of Mercer County that denied her motion to modify the parties' parenting plan for their daughter, M.S. Both respondent-father, Robert S., and the child's guardian ad litem, Priscilla Kinder Beavers, respond in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following the child's birth, the parties shared true joint custody of M.S. with one week on/one week off visitation. However, in 2014, when M.S. was six years old, the parties realized that their parenting plan would no longer be feasible when the child began attending school. Therefore, they modified their parenting plan with petitioner being the primary residential parent in odd numbered years beginning in 2011, and respondent being the primary residential parent in even numbered years beginning in 2012. However, in 2014, respondent filed a petition for modification that alleged petitioner was using drugs and had mental health issues. The family court appointed a guardian ad litem who recommended that respondent be the primary residential parent and that petitioner get treatment for her mental health issues. Ultimately, the family court found that petitioner was not mentally able to maintain 50/50 custody of the child. Therefore, the family court gave respondent primary custody of the child and petitioner parenting time every other weekend and one evening a month during the school year.

On July 15, 2019, when the child was within weeks of her fourteenth birthday, petitioner filed a petition to modify the parties' custodial arrangement alleging the following changes in

1

circumstance: (1) the child was older; (2) the parents needed equal parenting time with the child as "young woman issues" would occur; and (3) petitioner's mental health had stabilized to the extent that she would be able to parent the child on a 50/50 basis. At a February 13, 2020, family court hearing, the parties agreed to maintain the status quo, and that a guardian ad litem should be appointed for the child.

Following her appointment, the guardian ad litem undertook an investigation and, thereafter, tendered a report to the family court and the parties' counsel that set forth her findings and recommendations. In the report, the guardian ad litem noted that she had separately interviewed both parents and M.S. who was then almost fourteen years old. The guardian ad litem reported that M.S. wanted things to stay the way they were because it was the best schedule she had ever had with her parents. While she enjoyed seeing both of her parents, she was upset that custody proceedings had begun anew, she wanted her parents to get along, and she told her parents that she did not want any more changes to the parenting schedule. The guardian ad litem found that M.S. "adamantly" wanted the parenting schedule to stay the same and that there were no changes in circumstances warranting a new parenting plan.

By "Final Order" order entered July 31, 2020, the family court found that petitioner has a history of mental illness, is seeing a psychiatrist, is on medication for mental illness, and is still experiencing depression and anxiety. The family court noted that the child (1) is involved in summer marching band, Girl Scouts, and a STEM program; (2) is an honor roll student; and (3) has had perfect attendance since she began living with respondent. The family court also acknowledged respondent's testimony that the child's school attendance was an issue when the parents had the 50/50 custody arrangement. The family court found that the change in the child's maturity and awareness was a substantial change in circumstance, that petitioner's mental health had stabilized, and that the child wanted the visitation schedule to remain as it was. The family court ruled that the current custody order would remain in effect with minor adjustments, i.e., (1) each parent would have two weeks of vacation time with the child during the summer; (2) if there was no school on a Friday, the mother would begin visitation on a Thursday night; and (3) if there was a snow day, the child could elect to visit with her mother, grandmother, or great-grandmother. The family court further ruled that the child had a close bond with her half-brother (on her mother's side) who is in the military and wished to visit with him when he is home on leave. The family court encouraged the parties to assist the child in seeing her adult brother during those times.

Thereafter, petitioner hand-wrote an appeal to the circuit court in which she alleged that the family court "did not follow the case law and increase [her] parenting time" and did not consider "the child's age is advanced which is a substantial change." Following a hearing, the circuit court, by order entered November 4, 2020, found that the family court clearly considered the minor's increased age as a change in circumstances but

> determined that "the best interest of the child coupled with her strong desire for visitation to remain the same [did] not warrant a change in the parenting plan despite the changed circumstances." . . . West Virginia Code § 48-9-402 provides that a court should consider a modification in a parenting plan if it is in the best interest of the child and it is necessary to accommodate the reasonable and firm preferences of a child who[] had attained the age of fourteen. In this case, the

2

reasonable and firm preference of the child shows that no modification of the parenting plan is warranted in this case. Further there is no evidence that the family court's findings were clearly erroneous or an abuse of discretion.

Thus, the circuit court affirmed the family court's order.

Petitioner now appeals.

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004). Respondent filed a reply in support of the circuit court's order.[1]

Petitioner raises two assignments of error on appeal. Petitioner first argues that the circuit court erred in affirming the family court's decision by basing it, in part, on the guardian ad litem's report. Petitioner contends that the guardian ad litem did not conduct a proper investigation pursuant to West Virginia Code § 48-9-301. Specifically, petitioner claims she filed this action in the family court due, in part, to the allegations that M.S. and respondent were sleeping on bunk beds in the basement of respondent's home and that respondent's home did not have running water. Petitioner avers that the guardian ad litem did not view respondent's home to determine if these allegations were true before presenting her findings to the family court. Petitioner admits, however, that the guardian ad litem did visit the father's home prior to the circuit court hearing in this matter. However, petitioner argues that she did not know about the visit and, therefore, was not able to discuss it with the guardian ad litem. Finally, petitioner highlights that the guardian ad litem based her recommendation on the child's preferences when the child was only thirteen years old.

We find that the circuit court did not err in affirming the family court's decision. Under West Virginia Code § 48-9-301(a), a family court may order an investigation to aid it in determining an allocation of custodial decision-making responsibility for a minor child. Pursuant to § 48-9-301(b), the investigator may consult with any person who has information regarding the child and potential parenting arrangements. Here, the guardian ad litem in her written report: (1) listed the documents she reviewed in preparing her report, including petitioner's medical records; (2) reviewed the parenting plan then in place; and (3) noted the persons she interviewed, including petitioner, respondent, and the child's previous guardian ad litem. The guardian ad litem stated that she visited with the child twice in petitioner's home and that they discussed the child's background and school activities. The guardian ad litem stated that during this conversation she was able to assess M.S.'s maturity, her relationships with her family members, and her career preferences. In her written report, the guardian ad litem found that (1) there was no sign that M.S. had been coached; (2) M.S. did not speak ill of either parent and said she loved and enjoyed being

---

[1] The child's guardian ad litem also filed a response to petitioner's petition for appeal in support of the circuit court's order.

with both parents; (3) M.S. was adamant in expressing her preferences regarding a parenting plan and she said that the current schedule was the best schedule she had ever had with her parents; (4) M.S. wanted her parents to get along; and (5) M.S. wants to visit with her half-brother when he is home on leave from military service.

We also find no support for petitioner's claim that the guardian ad litem failed to inspect respondent's home in accordance with West Virginia Code § 48-9-301. On petitioner's appeal of the family court's order to the circuit court, the guardian ad litem testified that, while the case was pending in the family court, two floods occurred that washed out the road to respondent's house. Therefore, the guardian ad litem was unable to access respondent's home prior to the family court hearing. However, the guardian ad litem testified that when she learned of petitioner's appeal to the circuit court, she was able to access respondent's home and to inspect it. Thereafter, the guardian ad litem provided the following description of the home to the circuit court:

> It is a log home that is on top of a mountain. It is a beautiful log home. It's got wooden platform decks around it. [Respondent] has his bedroom that is in the loft of the home. It has a full-sized bed . . . . It has a shower. It has a commode. It has a sink that works. It has a washer and dryer. It has a stove . . . refrigerator . . . all the things you need. [The child] has her own room . . . with a locking door . . . . The home is suitable.

Thus, while the inspection of respondent's home was delayed, the guardian ad litem dispelled petitioner's claim that the respondent and the child were sleeping in bunk beds in respondent's basement and that respondent's home did not have running water.

In petitioner's second assignment of error, she argues that the circuit court erred in affirming the family court's decision by not observing that it was in the child's best interest to preserve important relationships in the child's life. Petitioner further argues that both the family court and the circuit court wrongfully focused on the child's preference that the parenting plan remain unchanged instead of focusing on petitioner's right to a full and fair chance to foster her relationship with the child.

The family court found that the advancement in M.S.'s age, from age six -- when the former parenting plan was drafted -- to almost age fourteen when petitioner's motion to modify the parenting plan was filed, was a change in circumstance under *Skidmore v. Rogers*, 229 W. Va. 13, 16, 725 S.E.2d 182, 185 (2011); and that the child wanted the allocation of parenting time to remain as it was because it was the best parenting schedule she had ever had. In its order, the family court (1) ensured that the child's relationships with both parents "remained," (2) slightly increased petitioner's parenting time, and (3) encouraged the parents to allow the child to see her half-brother when he was nearby. The family court also accommodated M.S.'s firm and reasonable preferences even though she was not quite fourteen years old when petitioner's motion was filed. However, she was fourteen years old when the order on appeal was entered. That said, West Virginia Code § 48-9-402(b) provides, in part, that:

> The court may modify any provisions of the parenting plan without the showing of changed circumstances required by § 48-9-401(a) if the modification is in the

4

child's best interests, and the modification . . . (3) [i]s necessary to accommodate the reasonable and firm preferences of a child who[] is *under the age of fourteen* and, in the discretion of the court, is sufficiently matured that he or she can intelligently express a voluntary preference.

(Emphasis added.) The guardian ad litem's report showed that M.S. was sufficiently mature and able to intelligently express a voluntary preference regarding the parties' custodial allocation. "Questions relating to . . . the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., *Nichols v. Nichols*, 160 W. Va. 514, 236 S.E.2d 36 (1977). Here, we find no abuse of discretion.

Accordingly, for the foregoing reasons, we affirm the circuit court's November 4, 2020, order that affirmed the family court's July 31, 2020, order denying petitioner-mother's motion to modify the parties' parenting plan.

Affirmed.

**ISSUED:** May 26, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton

**NOT PARTICIPATING:**

Justice C. Haley Bunn